# Richmond

CITY OF RICHMOND, ET ALS. V. MARY J. DERVISHIAN, ET ALS.

January 16, 1950.

Record No. 3545.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Buchanan and Staples, JJ.

400

The opinion states the case.

*J. Elliott Drinard* and *W. S. Cudlipp, Jr.*, for the appellants.

*Wilmer L. O'Flaherty* and *Harold H. Dervishian*, for the appellees.

EGGLESTON, J., delivered the opinion of the court.

On August 10, 1948, the council of the city of Richmond adopted a joint resolution authorizing and directing the city attorney to institute condemnation proceedings, under section 22 (b)[1] of the charter of the city, to acquire the property in the block bounded by Marshall, Clay, Seventh and Eighth streets, for the parking or storage thereon of vehicles by the public. The resolution recited that the city had been authorized by an act of the General Assembly, approved January 31, 1947 (Acts 1947, Ex. Sess., ch. 80, p. 145), to acquire property for that purpose when the city council deemed it necessary to do so in order "to relieve congestion in the use of streets and to reduce hazards incident to such use;" and that in the opinion of the council there was a public necessity that this property be acquired for that purpose. By the further terms of the resolution the sum of $275,000 was stated to be the estimated amount necessary to compensate the owners and was thereby appropriated for the purpose.

Two days later the complainant below, Mrs. Mary J. Dervishian, who owns a two-story brick building on a lot

---

[1] Acts 1926, ch. 318, p. 533, as amended by Acts 1942, ch. 252, p. 372.

within the block sought to be condemned, filed a bill in equity in the lower court seeking an injunction against the city of Richmond and certain of its officials to restrain them from instituting any action or proceeding under the resolution of the city council, or under section 22 (b) of the city charter, for the condemnation of her property. She alleged among other things, (1) that section 22 (b) was unconstitutional and void in that it permitted the taking of her property without due process of law, in violation of section 11 of the Constitution of Virginia, and (2) that the purported taking was not for a public use.

The complainant was awarded an *ex parte* temporary injunction enjoining the city and its agents from proceeding with the condemnation of her property.

Subsequently certain other persons who owned property in the block sought to be condemned were allowed to intervene as parties complainant and a similar temporary injunction was issued restraining the city and its agents from instituting condemnation proceedings with respect to their properties.

The city and its agents filed demurrers to the bill and intervening petitions testing their legal sufficiency.

In a written opinion the lower court held that the taking of private property by the city for the purpose of parking vehicles of the public thereon was a public use, but that section 22 (b) of the city charter, under which the city proposed to condemn the property, was unconstitutional and void for the reasons asserted by the complainant landowners. Accordingly, a decree was entered overruling the demurrers and perpetually enjoining and restraining the city and its agents from instituting any action or proceeding pursuant to the provisions or direction of the resolution of the city council.

From this decree the city of Richmond and its officials have appealed, asserting that the lower court erred in holding section 22 (b) of the city charter to be unconstitutional, and in enjoining and restraining the institution of proceedings

for the purpose of acquiring the property, as directed by the resolution.

Mrs. Dervishian and the other intervening property owners assign cross-error to the action of the lower court in holding that the proposed acquisition of the property by the city for parking purposes is a public use. We shall dispose of the latter issue first.

By Acts of 1947, Ex. Sess., ch. 80, pp. 145, 146, section 19-c of the charter of the city of Richmond was amended to authorize and permit the city to acquire and maintain property for public uses. Included in such delegation of authority is the power "To acquire places for the parking or storage of vehicles by the public, which shall include but shall not be limited to parking lots, garages, buildings and other land, structures, equipment and facilities, when in the opinion of the council they are necessary to relieve congestion in the use of streets and to reduce hazards incident to such use; to operate and maintain such places; to authorize or permit others to use, operate or maintain such places upon such terms and conditions as the council may prescribe; to charge or authorize the charging of compensation for the parking or storage of vehicles at or in such places; and to accept donations of money or other property or the right to use such property from others to aid in whole or in part in the acquisition, maintenance and operation of such places."

This is an express declaration by the General Assembly that the contemplated use is a public one. While such declaration is not conclusive and is subject to judicial review (*Light* v. *Danville*, 168 Va. 181, 208, 190 S. E. 276, 287; *Mumpower* v. *Housing Authority*, 176 Va. 426, 448, 11 S. E. (2d) 732, 740), it is presumed to be right. 18 Am. Jur., Eminent Domain, sec. 46, p. 675; 29 C. J. S., Eminent Domain, sec. 30, p. 822.

The stopping or parking of vehicles along the street is, of course, a legitimate use thereof. No one questions the authority of a city to condemn property adjacent to an exist-

ing street for the purpose of widening it so as to accommodate the parking of vehicles as well as to facilitate the flow of traffic thereon. If a municipality may, for the purpose of providing parking space for vehicles, take land adjacent to an existing street, we know of no reason why it should not provide such parking space away from the street. The purpose is the same and is a public one in either instance.

Moreover, in congested areas of a city the proper regulation of traffic in the interest and safety of the public may require that vehicles be parked in off-street locations set aside for the purpose rather than in the streets themselves. The acquisition by the city of the necessary property to provide such parking areas is a proper incident to its right and duty to regulate the use of its streets, and the use of the property for such purpose is a public one.

Our view of the matter is sustained by decisions in other jurisdictions. In *Miller* v. *Georgetown*, 301 Ky. 241, 191 S. W. (2d) 403, it was held that the taking of a tract of land abutting a street for parking lot facilities was a proper municipal purpose and incident to the municipality's right to regulate traffic.

In *Whittier* v. *Dixon*, 24 Cal. (2d) 664, 151 P. (2d) 5, 153 A. L. R. 956, it was held that the acquisition and operation of public parking places were for a public purpose and that property therefor could be acquired by condemnation and paid for by special assessment. The following quotation from that opinion is peculiarly applicable to the situation now before us; "Respondent contends that public parking places are not public improvements. The Legislature, however, has expressly authorized the acquisition of parking places to serve the public, and the legislation is valid so long as it serves some public purpose. (Citing cases.) Just as public streets can be used for the parking of motor vehicles, property can be acquired for the same use. Moreover, public parking places relieve congestion and reduce traffic

hazards and therefore serve a public purpose." (151 P. (2d) p. 7, 153 A. L. R. p. 960.)

See also, *Ambassador Management Corp.* v. *Incorporated Village of Hempstead,* 58 N. Y. S. (2d) 880, affirmed 62 N. Y. S. (2d) 165 (appeal dismissed, 296 N. Y. 666, 69 N. E. (2d) 819; *cert.* denied, 330 U. S. 835, 67 S. Ct. 971, 91 L. ed. 1282).

■ The appellees argue in their brief that the acquisition of the property here in question for a parking lot will primarily benefit two near-by department stores and will, therefore, not be for a public use. This contention is beside the point. The fact that property acquired to serve the public may also incidentally benefit some private individuals does not destroy the public character of the use. See *Mumpower* v. *Housing Authority, supra* (176 Va., p. 449, 11 S. E. (2d) p. 741), and cases there cited.

Nor are we concerned in the present proceeding with the allegation in the bill and the argument in the brief that the city "is considering a proposal" to lease the property, after it has been acquired, to a private corporation for operation at a profit, and that this will destroy its public use. There is nothing in the joint resolution of the council authorizing the acquisition of the property to sustain this allegation and argument, and consequently we express no opinion thereon.

We agree with the trial court that the contemplated acquisition of the land is for a public use.

Is section 22 (b) of the city charter constitutional?

By the Acts of 1942, ch. 252, pp. 372, 373, 374, the General Assembly amended section 22 of the city charter, as found in the Acts of 1926, ch. 318, p. 557, and delegated to the city the power to acquire property by eminent domain for its public use by alternative methods of procedure.

By section 22 (a) the city is authorized and empowered

to institute such proceedings under the general law. Code, sec. 4360 ff.[2]

Section 22 (b) of the city charter provides: "In addition to the procedure prescribed by general law for the exercise of the power of eminent domain, the council of the city may, by such ordinance or resolution, direct the acquisition of such property and provide therein in a lump sum the total estimated necessary funds to compensate the owners thereof for the property or properties to be acquired or damaged. Upon the adoption of such ordinance or resolution the city may file a petition in the clerk's office of any of the courts hereinbefore enumerated, which shall be signed by the mayor and shall set forth the interest or estate to be taken in the property and the uses and purposes for which the property or the interest or estate therein is wanted, or when no property is to be taken but is likely to be damaged, the necessity for the work of improvement which will cause or is likely to cause damage to the property or estate of any person."

The section then requires that there be filed with the petition a plat and description of the property which "is sought to be taken or likely to be damaged and a memorandum showing the names and residences of the owners of the property, if known, and showing also the quantity of property which, or an interest or estate in which, is sought to be taken or will be or is likely to be damaged."

Continuing, the section reads: "There shall be filed also with said petition a notice directed to the owners of the property, if known, copies of which shall be served on such owners or on tenants of the freehold of such property, if known." Provision is made for an order of publication against "such owner or tenant" who may be unknown or a nonresident or cannot with reasonable diligence be found in this State.

"Upon the filing of said petition and the deposit of the

---

[2] For a slight difference between the procedure under this section of the charter and that under the general law, see *Fonticello Mineral Springs Co. v. Richmond*, 147 Va. 355, 137 S. E. 458.

funds, provided by the council for the purpose, in a bank to the credit of the court in such proceedings and the filing of a certificate of deposit therefor, *the interest or estate of the owner of such property shall terminate and the title to such property or interest or estate of the owner shall be absolutely vested in the city in fee simple* and such owner shall have such interest or estate in the funds so deposited as he had in the property taken or damaged and all liens by deed of trust, judgment or otherwise upon said property or estate shall be transferred to such funds and the city shall have the right to enter upon and take possesssion of such property for its uses and purposes and to construct its works of improvement." (Emphasis added.)

Provision is made for recording and indexing the necessary documents to show the transfer of the title to the property from the owner to the city.

"If the city and the owner of property so taken or damaged agree upon compensation therefor" they may file in the clerk's office a written agreement to this effect and the fund may be distributed accordingly.

"If the city and the owner cannot agree upon the compensation for the property taken or damaged" either may file in the clerk's office a memorandum to that effect, whereupon "the court shall appoint commissioners provided for in section forty-three hundred and sixty-six of the Code of Virginia or as provided for in this section and all proceedings thereafter shall be had as provided in section forty-three hundred and sixty-six through forty-three hundred and eighty-one of the Code of Virginia in so far as they are then applicable * * *."

It is further provided that "the court shall order the deposit in bank to the credit of the court such additional funds as appear to be necessary to cover the award of the commissioners or shall order the return to the city of such funds deposited that are not necessary to compensate such owners for property taken or damaged."

The lower court in its written opinion held that this

section was lacking in the due process of law guaranteed to the owner by section 11 of the Constitution of Virginia, in that it "provides a method" whereby the city may acquire an indefeasible title to and possession of the owner's property prior to notice to him and in advance of a hearing on its right to do so.

██ The city, on the other hand, contends that the due process clause of the Constitution does not require notice to the owner and a judicial determination of the validity of the taking in advance of the taking; that section 22 (b) meets the requirements of the due process clause in that upon the filing of the petition and the payment into court of the amount estimated to be due the owner, the city acquires only a defeasible title to and right of possession of the property, both to be defeated upon a showing that the taking is not for a public use; and that under the section the owner is afforded a hearing, which follows the taking, both as to the validity of the taking and the amount of just compensation to be paid him for the loss of his property.

In our opinion the city's contention is sound and in accord with the correct interpretation of the section.

It should be remembered that the wisdom and expediency of the legislation involved is not before us. There are indications in the opinion[3] of the lower court that it took

---

[3] "It is only where the exigencies of the particular case, whether it be in the exercise of the police power, eminent domain, or any other power of the state, demand that prompt action be taken in the immediate interest of public good, that the state is permitted to act in a summary fashion. These particular and extreme situations are usually provided for by special legislation which permits a hearing on the merits and validity of the summary action at a later date. On the other hand, routine situations unaccompanied by a conditional demanding summary action, are governed by general legislation which contemplates the usual demands of due process, viz. notice and an opportunity to be heard prior to action. It would be an anomaly indeed if all state action were declared to be emergency action necessitating the same type of summary taking statute to govern all cases of eminent domain,—and yet it seems that section 22b of the city charter does just that. It permits in every type of case the absolute taking of title and possession by legislative and executive fiat prior to any notice to the condemnee or opportunity for him to be heard on any question in any forum or tribunal. Even assuming that the federal government or the state

the view that the delegation by the General Assembly of the authority to the city to proceed to acquire property for its needs in such a "summary action" should have been conditioned upon the existence of a "public emergency," or that the city council should not have so proceeded in the absence of an emergency.

■■ But these were matters to be decided by the state and city legislatures respectively. The mode of exercising the right of eminent domain is within the unlimited discretion of the General Assembly, so long as the landowner's constitutional rights are protected. Moreover, where a municipality has been granted an unlimited alternative right of procedure, it is for the local legislature to say which method is to be pursued in a particular case.

The inquiries directed to us here are, (1) whether the legislation meets the constitutional requirements of due process, and (2) whether the procedure therein prescribed has been followed.

■ That the requirements of due process do not inhibit the sovereign from taking physical possession of private property for public use in a condemnation proceeding prior to notice to the owner and in advance of a judicial determination of the validity of such taking has been settled by the decisions of the Supreme Court and the rulings of this court.

*Bragg* v. *Weaver*, 251 U. S. 57, 40 S. Ct. 62, 64 L. ed. 135, decided in 1919, involved the validity of subsections 21 and 22 of section 944a of Pollard's Code of 1904 (Acts 1904, ch. 106, p. 198), which authorized and permitted the superintendent of county roads to "take from the most convenient

government in the exercise of their sovereign rights respectively might be justified in enacting such an extreme uniform statute to govern all types of takings, we are not dealing in this case with a sovereign power. The city of Richmond is dependent upon power delegated to it by the sovereign, and by the very nature of the case, the exigencies surrounding municipal needs for property can rarely be extreme. The vast majority of instances in which a municipality needs to take summary action arise in connection with its use of police power delegated to it by the state. It is difficult to see how general summary action is needed by a municipality in all types of condemnation cases."

lands so much wood, stone, gravel, or earth as may be necessary to be used in constructing or repairing any road, bridge, or causeway therein." There was no provision in the statute for notice to the owner before the soil and other materials were to be taken from his property, but this and the related statutes provided a method whereby subsequent to the taking the amount of compensation due to the owner could be judicially determined.

Bragg, a property owner, filed a suit in equity in the Circuit Court of Lunenburg county to enjoin Weaver and the other road officials from trespassing on his land for the purpose of taking soil therefrom under the provisions of this statute, claiming that it violated the due process clauses of the State and Federal Constitutions. The circuit court refused an injunction and the Supreme Court of Appeals denied an appeal to Bragg. He appealed to the Supreme Court of the United States, reasserting the claim that the statute violated the due process clause of the Fourteenth Amendment. That court affirmed the decree of the highest court of Virginia, and held that since the taking was for a public use and adequate provision was made for a judicial determination of the amount of just compensation due the property owner, the requirements of the due process clause of the Fourteenth Amendment had been met, although under the statute the contemplated hearing was to be instituted and conducted subsequent to the taking. In the course of the opinion it was said: "The claim is made that this opportunity (for a hearing) comes after the taking, and therefore is too late. But it is settled by the decisions of this court that where adequate provision is made for the certain payment of the compensation without unreasonable delay, the taking does not contravene due process of law in the sense of the 14th Amendment merely because it precedes the ascertainment of what compensation is just." (251 U. S., p. 62.)

*Bailey* v. *Anderson*, 326 U. S. 203, 66 S. Ct. 66, 90 L. ed. 3, decided in 1945, involved the validity of section 1969j(4)

of Michie's Code of 1942 (Acts 1940, ch. 380, sec. 4, p. 669), which authorized the State Highway Commissioner to enter upon and take possession of property necessary for highway purposes, and, "within sixty days after the completion of the construction of such highway," to institute condemnation proceedings to acquire title to the property so taken. There was no provision in the statute requiring notice to the owner prior to the taking of his property.

Bailey, a property owner, claimed in the Circuit Court of Fairfax county that this statute violated the due process clauses of section 11 of the Virginia Constitution and of the Fourteenth Amendment to the Federal Constitution. Being unsuccessful there, he applied to the Supreme Court of Appeals for a writ of error which was denied. On appeal the Supreme Court of the United States held that upon the authority of *Bragg* v. *Weaver, supra*, the statute did not violate the due process clause of the Fourteenth Amendment.

The trial court's written opinion holds that neither of these cases is controlling here, because, it is said, in each the nature of the use was not in dispute, was clearly a public one, and hence the Supreme Court did not pass upon the precise point here involved, namely, whether due process requires that prior to the taking the owner be given notice and a judicial hearing on the validity of the taking.

Inasmuch as it has been determined that the use is a public one, the present case is within the influence of the two above cases, for here, as in those cases, the only remaining issue is the ascertainment of the amount of just compensation due for which the section makes adequate provision.

But aside from this, if due process of law is satisfied by a hearing on the issue and the amount of just compensation due, in a proceeding instituted and conducted subsequent to the taking, we perceive no valid reason why it is not likewise satisfied by a subsequent hearing as to the validity of the taking where under a proper interpretation of the statute the condemnor, at the time of the taking, acquires only a defeasible title to and right of possession of the property.

Should it develop on the hearing that the particular taking was not for a public use, only the taking and not the statute would be invalid. In such event the property owner would be entitled to maintain an action of trespass against the city to recover his damages. 30 C. J. S., Eminent Domain, sec. 400, p. 118; 18 Am. Jur., Eminent Domain, sec. 385, p. 1030; *Nelson County* v. *Coleman*, 126 Va. 275, 282, 101 S. E. 413.

The city's position is further supported by decisions upholding the validity of the Federal Declaration of Taking Act of 1931. (46 Stat. 1421, 40 U. S. C. A., secs. 258a-258e.) The procedure there outlined is quite similar to that in section 22 (b) of the city charter. Indeed, it is said that the charter provision is modeled after this federal statute.

In substance, the federal statute provides that in a condemnation proceeding the government may expedite the acquisition of title and possession by filing a declaration that the lands involved are thereby taken for the use of the United States and the payment into court of the amount of estimated compensation due the owner or owners. The declaration must contain (1) a statement of the authority under which and the public use for which the lands are taken, (2) a description of the lands taken, (3) a statement of the estate or interest in the lands taken for public use, (4) a plan showing the lands taken, and (5) a statement of the sum of money estimated by the acquiring authority to be just compensation for the lands taken.

The statute then provides: "Upon the filing said declaration of taking and of the deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title to the said lands in fee simple absolute, * * * shall vest in the United States of America, and said lands shall be deemed to be condemned and taken for the use of the United States, and the right to just compensation for the same shall vest in the persons entitled thereto; * * *."

Continuing, the statute provides: "Upon the filing of a

declaration of taking, the court shall have power to fix the time within which and the terms upon which the parties in possession shall be required to surrender possession to the petitioner."

The statute makes no provision for notice to the landowner prior to the taking or as to the entry of the order fixing the time within which possession shall be surrendered, and, as the reported cases indicate, such order is usually entered *ex parte* on the motion of the government.

In *Oakland* v. *United States*, C. C. A. 9, 124 F. (2d) 959,[4] it was held that the procedure under this statute and the entry of an *ex parte* order fixing the time within which the government should take possession of the property did not violate the due process clause of the Fifth Amendment, because the property owner was thereafter afforded an opportunity of testing the validity of the taking.

In *Catlin* v. *United States*, 324 U. S. 229, 65 S. Ct. 631, 89 L. ed. 911, the interpretation of the Declaration of Taking Act was before the Supreme Court. One of the questions involved was whether the statute contemplated that the owner should have the right to contest the validity of the taking in proceedings to be had after the government had entered into possession of the property. Of this the court said:

"While the language and the wording of the act are not wholly free from doubt, we see no necessary inconsistency between the provisions for transfer of title upon filing of the declaration and making of the deposit and at the same time preserving the owner's preexisting right to question the validity of the taking as not being for a purpose authorized by the statute under which the main proceeding is brought. That result may be reached if the statute is construed to confer upon the Government, upon occurrence of the events specified, *only a defeasible title in cases where an issue concerning the validity of the taking arises.* So to construe the act would accomplish fully the purposes for which it was

---

[4] *Cert.* denied, 316 U. S. 679, 62 S. Ct. 1106, 86 L. ed. 1753.

adopted in the large number of cases where no such issue is made. In others this would go far toward doing so, for not all such issues will be followed through to final decision or, if so followed, will turn out adversely to the Government. The alternative construction, that title passes irrevocably, leaving the owner no opportunity to question the taking's validity or one for which the only remedy would be to accept the compensation which would be just if the taking were valid, would raise serious question concerning the statute's validity. In any event we think it would run counter to what reasonable construction requires." (Emphasis added.) (324 U. S., p. 241.)

The reasoning of that opinion is, we think peculiarly applicable to the situation before us. The language of section 22 (b) of the city charter, that upon the filing of the petition and the payment of the necessary fund into court the interest or estate of the owner "shall be absolutely vested in the city in fee simple," was not designed or intended to prevent the owner from contesting the validity of the taking. It merely defines the quality of the estate which the city acquires in the property should the use be admittedly a public one or should the city prevail in the proceeding in which the validity of the taking is in issue.

It may be noted in passing that the language defining the quality of the estate to be acquired by the city is almost identical with that found in Code, sec. 4369, defining the quality of the estate acquired by the condemnor under the general condemnation statute.

It is true that section 22 (b) of the charter contains no express provision giving the property owner the right to contest the validity of the taking. This is not necessary. Neither do the general condemnation statutes (Code, sec. 4360 *ff.*) contain such a provision, and yet we have repeatedly held that such right of defense is implied and may be asserted. *Light* v. *Danville, supra; Mumpower* v. *Housing Authority, supra.* The same is true here.

The appellees argue that the lower court was correct in

enjoining the proposed condemnation proceedings because the city has made no *bona fide* effort to acquire the property by purchase, as is required by Code, sec. 4363.

While this question was raised in the bill of complaint the trial court found it unnecessary to pass on it. There is no merit in this contention. "Unless required by constitutional or statutory provision, an attempt to reach an agreement with the owner for a purchase of the land * * * is not a condition precedent to the institution of condemnation proceedings." 29 C. J. S., Eminent Domain, sec. 224, p. 1163, and cases there cited. See also, 18 Am. Jur., Eminent Domain, sec. 319, p. 962.

In this State there is no constitutional provision on the subject and the matter is governed by statute. Had the city contemplated acting under section 22 (a) of the charter, which authorizes the institution of condemnation proceedings under the general law, it would be necessary that such *bona fide* effort to acquire the property by purchase be made prior to the institution of the proceeding. *Charles* v. *Big Sandy, etc., R. Co.,* 142 Va. 512, 129 S. E. 384.

But here the contemplated procedure is under the alternative method prescribed by section 22 (b). Clearly, we think, this latter section contemplates that the city will negotiate for the purchase of the property *after* the filing of the petition for acquisition and not *before*. As will be seen from the portions of the statute quoted above, if, after the petition has been filed, the city and the property owner agree upon compensation, they may file in the clerk's office a written agreement to this effect and the fund may be distributed accordingly. If, on the other hand, they cannot agree, the court is directed to appoint commissioners to fix the amount of compensation due the property owner.

Had the section contemplated negotiations prior to the filing of the petition there would be no point in requiring further negotiations after the proceedings had been instituted as a condition precedent to the appointment of commissioners.

Section 22 (b) of the charter, having been enacted subsequent to the general statute (Code, sec. 4363), is controlling with respect to condemnation proceedings instituted and conducted by the city of Richmond. *Fonticello Mineral Springs Co.* v. *Richmond*, 147 Va. 355, 359, 360, 137 S. E. 458; *Chambers* v. *Roanoke*, 114 Va. 766, 768, 78 S. E. 407.

The joint resolution which authorized the institution of the condemnation proceedings merely describes the entire property to be acquired as being "in the block" bounded by Marshall, Clay, Seventh and Eighth streets, as is "substantially shown" on a plan on file in the office of the Department of Public Works of the city. The individual owners are not named, nor are their properties described separately. The resolution fixes the total amount estimated to be necessary to compensate the owners for the whole property to be taken at $275,000, without specifying the estimated amounts to be due to each.

While the matter does not seem to have been raised below and is not discussed in the briefs, at the oral argument before us it was suggested that the resolution is fatally defective in that this is not an adequate description of the property to be acquired, that the several individually owned parcels embraced within the block should have been described separately, and that the several owners thereof, their respective interests in the properties to be acquired, and the estimated amounts to be paid each should have been detailed in the resolution.

In our opinion the point is well made. The adoption of "such ordinance or resolution" is required by section 22 (b) and is a condition precedent to the maintenance of the condemnation proceedings. 18 Am. Jur., Eminent Domain, sec. 317, p. 961; 29 C. J. S., Eminent Domain, sec. 223, p. 1154.

It is generally held that in the absence of a contrary statutory provision the property and the interest therein to be acquired must be described or designated with reasonable certainty in the basic ordinance. 29 C. J. S., Eminent Do-

main, sec. 223, p. 1159. The cases there cited support the text.

■■ While the statutory provision here authorizes the council to provide by such ordinance or resolution "a lump sum" representing "the total estimated necessary funds to compensate the owners thereof for the property or properties to be acquired," which indicates that the matter may be dealt with in a single ordinance, and the several properties acquired in one proceeding,[5] it does not dispense with the other fundamental requirements of the local legislation.

Neither does the fact that the section requires that the petition shall contain "a description of the property which, or an interest or estate in which, is sought to be taken or likely to be damaged and a memorandum showing the names and residences of the owners of the property if known," dispense with the necessity of incorporating such matters in the ordinance or resolution.

Moreover, we think, each owner is entitled to know at the outset what amount the city officials estimate will be necessary to compensate him for the acquisition of or damage to his property. The estimated amount specified in the ordinance or resolution to be paid to a particular property owner may be such as to save him the trouble and expense of contesting the contemplated condemnation proceeding.

Again, the primary duty of fixing the estimated amounts to be paid to the several property owners is on the council, and while this duty may be delegated to the proper official or officials, fixing such amounts in the ordinance or resolution will serve as a guide to the representatives of the city in their later efforts to agree upon the compensation to, be paid. Under the resolution adopted, there is no limit as to what amount or amounts may be paid to the respective

---

[5] In Virginia, there being no statute requiring a separate proceeding as to each landowner, several owners of land sought to be condemned may be convened in one proceeding. *Hannah* v. *Roanoke*, 148 Va. 554, 564, 139 S. E. 303; *Rudacille* v. *State Commission, etc.*, 155 Va. 808, 814, 156 S. E. 829.

owners, other than that the total shall not exceed the appropriation of $275,000.

Because of these defects in the basic resolution we are of opinion that the lower court was correct in entering the decree enjoining the institution of the condemnation proceedings.

The decree appealed from will be modified to provide that the procedure set forth in section 22 (b) of the charter is valid and not violative of the due process clause of section 11 of the Virginia Constitution; that because of the defects outlined above in the joint resolution of August 10, 1948, the defendants below are perpetually enjoined and restrained from instituting any action or proceeding pursuant to such resolution, such injunction, however, to be without prejudice to the right of the council of the city of Richmond to adopt a proper resolution or ordinance, if it be so advised, authorizing the acquisition by condemnation proceedings of the property mentioned in the joint resolution of August 10, 1948. As so modified the decree appealed from will be affirmed.

*Modified and affirmed.*