## Richmond

### DALLAS PHILLIPS, ET AL. v. WIRT H. FOSTER, ET AL.

January 20, 1975.

Record No. 740009.

Present, All the Justices.

*Robert Austin Vinyard (S. Strother Smith, III; Smith, Robinson & Vinyard,* on brief, for appellants.

*James D. Bowie (T. L. Hutton, Jr.; Warren & Bowie,* on brief), for appellees.

Compton, J., delivered the opinion of the court.

The question we decide in this case is whether Code § 21-428 (Repl. Vol. 1960) is unconstitutional as applied to the facts of this case, upon the ground that it authorizes the taking of private property for private use. It provides as follows:

"§ **21-428. Right to drain land through lands of others.** — Any person desiring to drain his lands through the lands of others may apply to the circuit court of the county or corporation court of the city in which the whole or a part of the last mentioned lands lie, for the appointment of commissioners to ascertain and report upon the property [sic] [1] of granting such application and the damages that may be

---

[1] "Propriety" is the correct word. Code 1919, § 5293.

sustained by the party or parties through whose lands the drain is proposed to be run. Notice of such application shall be given to the proprietors of the lands through which such drain is to be run in the manner prescribed by [§§ 25-46.9-.13]."

This legislation permitting the condemnation of a drainage easement, of which the foregoing is the principal part, was first enacted in 1848. Acts 1847-48, ch. 110. The first codification, Code 1849, ch. 124, §§ 13-16, has been carried forward to its present form in Code §§ 21-428 to -431 without material or substantial alteration,[2] so we will refer to the legislation as it is presently codified.

We declare the statute to be unconstitutionally applied in this case and, accordingly, we reverse the judgment of the trial court.

The record consists of the pleadings filed in the trial court, the orders entered therein, the report of the condemnation commissioners, an exhibit containing portions of the Subdivision Ordinance of Washington County, Virginia, and a plat showing the proposed drainage easement.

Appellees, Wirt H. Foster, Anne T. Foster, and Asia-Pacific Management and Development Corporation (hereinafter the Fosters), filed a condemnation petition on March 2, 1973, in the court below against the appellants, Dallas Phillips and Eulalah Phillips, seeking to condemn, pursuant to Code § 21-428, a drainage easement about 12 feet wide and 200 feet long across the Phillips property located in Washington County.

The Phillips land is adjoined on the south by Virginia State Route 677 and on the north by Fifteen Mile Creek. Adjacent to Route 677 on the south, directly across from the Phillips property and at the location in question, lies a 49 acre tract of land of the Fosters, which they intend to develop into a private housing subdivision. The Washington County subdivision ordinance required that the proposed plan for the subdivision be submitted for approval to several governmental agencies, including the Virginia State Department of Highways. The Fosters submitted their preliminary plan, but the State Highway Engineer refused to approve it because it failed to provide for adequate surface water drainage.

Following the disapproval and after an unsuccessful effort to purchase the drainage easement from the Phillipses, the Fosters

---

[2] *E.g.*, Code 1873, ch. 120, §§ 13-16; Code 1887, §§ 2576-79; Code 1936, §§ 5293-96.

filed the instant condemnation petition alleging that the State Highway Department "requires a drainage easement approximately twelve feet wide to channel such surface water into Fifteen Mile Creek . . ."; that "the natural and logical path for the aforementioned easement to follow would be the shortest distance from the place where surface drainage water would leave [the Foster] property to the nearest point upon said Fifteen Mile Creek, and said path would take said drainage across the [Phillips] property . . . at a place hereinafter described; [and] that the natural and logical path for said drainage to follow was established in accordance with the recommendation of the district drainage engineer, Virginia State Department of Highways, . . ."

The Phillipses answered, attacking the constitutionality of the statute. The trial court, finding it "proper to do so," appointed commissioners who viewed the property accompanied by a land surveyor and representatives of the Highway Department. The commissioners subsequently made their report, which was confirmed by the trial court in the final decree appealed from entered on September 6, 1973. In their report, the commissioners found "[t]he mode of draining the land [of the Fosters], as proposed . . . is proper . . . and the granting of such application is proper." They awarded compensation for the easement of $300 and awarded $2500 for damages to "the adjacent and other property" of the Phillipses by reason of the easement.

The Phillipses challenge the validity of the statute on two grounds. They argue, first, that it is unconstitutional on its face. Alternatively, they contend that even if the statute is facially constitutional, the statute has been applied in this case in an unconstitutional manner.

The Fosters contend that the statute was held constitutional "*per se*" in *Hodges* v. *Richmond Cedar Works*, 120 Va. 492, 91 S.E. 644 (1917). They argue that the statute, as limited by its requirement that the trial court determine the "propriety" of the taking, and further limited by the federal and state constitutions, "permits only the taking of private property for public uses and purposes."

The Fosters also argue that the statute has not been unconstitutionally applied here because the drainage easement will directly benefit the public. In support of this position, they point, first, to the stated objectives of the county subdivision ordinance which provide for ". . . the orderly beneficial growth

of the community, and [for promotion of] the public health, safety, convenience, comfort, prosperity and general welfare." They argue that pertinent provisions of the ordinance indicate "[t]he overwhelming concern of the policy-making authorities of Washington County to both protect and promote on a long range basis the interest of the public in subdivided land, and in particular to assure adequate drainage, . . ." Secondly, they point out that this drainage easement will become public property upon final approval of the subdivision plans and upon recordation of their final subdivision plat, citing Code § 15.1-478. For these reasons, the Fosters contend that ". . . the public will exclusively enjoy the benefit of this drainage easement . . ." and that "the right to the use of the condemned property, in large part, determines whether or not the use is public or private."

We avoid declaring this legislation unconstitutional on its face in this case. "The decision of a question involving the constitutionality of an act is one of the gravest and most delicate of the judicial functions, and, while the court will meet the question with firmness where its decision is indispensable, it is the part of wisdom, and a just respect for the Legislature renders it proper, to waive it if the case in which it arises can be decided on other points." *Norris* v. *County Court of Cabell County*, 111 W.Va. 692, 693, 163 S.E. 418 (1932). Here, we can decide this case without declaring the statute facially unconstitutional. It is for this reason, therefore, that we consider only the issue of whether the statute has been applied unconstitutionally, and we do not decide the question of whether it is unconstitutional on its face.

We hold that the application of the statute is unconstitutional in this case. The trial court, under the authority of the statute, has found the taking "proper," the effect being to decree that private property be taken for private use.

It has been universally held that the spirit of the Constitution of Virginia and the Federal Constitution prohibits the taking of private property for private use under any conditions. *Boyd* v. *Ritter L. Co.*, 119 Va. 348, 351-52, 89 S.E. 273, 274 (1916). *See* Va. Const. art. I, § 11; U.S. Const. amend. V and XIV. The Fosters emphasize that since the condemnation here will "benefit" the public, the application of the statute is constitutionally valid. In their brief they argue that the "drainage will directly inure to

the *benefit* of the public" and that the "public will exclusively enjoy the *benefit* of this drainage easement . . . ." (Emphasis supplied). This argument misses the point, and we reject it.

The salient consideration is not whether a *public benefit* results, but whether a public *use* is predominant. "Public use and public benefit are not synonymous terms." *Richmond* v. *Carneal,* 129 Va. 388, 393, 106 S.E. 403, 405 (1921). It is of no importance ". . . that the public would receive incidental benefits, such as usually spring from the improvement of lands or the establishment of prosperous private enterprises: the *public use* implies a possession, occupation, and enjoyment of the land by the public at large, or by public agencies; and a due protection to the rights of private property will preclude the government from seizing it in the hands of the owner, and turning it over to another on vague grounds of public benefit to spring from the more profitable use to which the latter may devote it." 2 Cooley's Constitutional Limitations 1126-1129 (8th ed. 1927).

In this case, the attempt to develop the Fosters' 49-acre tract for private gain is the genesis and the basis for this condemnation of the easement across land of the Phillipses. Without the urge to develop the land, the pertinent provisions of the subdivision ordinance are not activated. Without the attempt to develop, Highway Department approval of the plans for drainage is unnecessary. Without the development, the statute transferring title to the easement does not become operative. While the public may be incidentally affected as the result of the ordinance, as the result of the Highway Department regulations, and as the result of the statutory provisions, nevertheless, this incidental public *benefit* is ancillary to and collateral to the underlying and primary purpose of the taking. That purpose in this case is for the improvement of one's land at his neighbor's expense, and for the establishment of a prosperous private enterprise by the former to the detriment of the latter. Such a taking is not for a public *use* within constitutional limitations, and amounts to an unconstitutional application of the statute in question in this case. *See Rudee Inlet Authority* v. *Bastian,* 206 Va. 906, 147 S.E.2d 131 (1966).

The Fosters rely upon *Hodges* v. *Richmond Cedar Works, supra,* but such reliance is misplaced. Without commenting upon the precedental value of *Hodges* as authority to support the

facial constitutionality of the legislation in question, that case does not support the Fosters' position on the issue we decide. None of the evidence in *Hodges* in the trial court was certified and this Court "presumed" that a "proper case was made out" by the condemnor. 120 Va. at 495, 91 S.E. at 645. The original record in that case in the files of our Clerk merely reveals that the condemnor's tract was not "properly drained" and that the "natural, proper and convenient method of draining . . . [the land] would be by a ditch three feet wide at the bottom . . . through . . . the said Hiram Hodges' land . . . ." Accordingly, we are unable to determine from the record in *Hodges*, or from the decision of the Court, whether the taking, although "proper," was for a public use. Therefore, we refuse to follow *Hodges*, and to the extent that the statements made in *Hodges* conflict with the views herein enunciated, *Hodges* is expressly overruled.

For these reasons, the decree of the trial court will be reversed, the condemnation petition will be dismissed and final judgment will be here entered for the appellants.

*Reversed and final judgment.*