## CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Multi-Channel TV Cable Co.

v.

Charlottesville Quality
Cable Corp. et al.

June 8, 1992

Case Nos. (Chancery) 7623, 7624, and 7627

BY JUDGE JAY T. SWETT

For several years, the complainant, Adelphia Cable, a subsidiary of the Multi-Channel TV Cable Company, has provided cable television service to much of the City of Charlottesville. This dispute comes before the Court on a request by Adelphia for a temporary injunction to prevent the owners of several apartment buildings from denying the tenants of those complexes access to Adelphia's services.

This suit arose because the owners of several area rental housing complexes (Brandon Limited Partnership, L-R Investments, Madison Limited Partnership, Cabell Limited Partnership, Rugby-McIntyre Land Trust, Oxford Hill Land Trust, and Stadium Road Limited Partnership (hereafter "Owners")) have contracted with Charlottesville Quality Cable Corporation ("CQC") to provide their buildings with a competing service using a multichannel multipoint distribution system ("MMDS"). Respondent Management Services Corporation ("MSC") manages the rental units of the Owners. Although CQC and Adelphia provide similar television programming, all parties concede that CQC is not a "cable television company" within the meaning of either state or federal statutes. Cable television uses a wire-based system to transmit programming from its operation center. CQC uses satellite dishes at each building to receive microwave signals and transmits them to each apartment. The con-

tracts between the Owners and CQC give CQC the exclusive right to offer television programming to the residents of these buildings. The owners have notified the tenants in these buildings that Adelphia will no longer be providing cable services to those apartments. MSC has sent notice to Adelphia to remove all of their equipment from the complexes in question.

Pursuant to Va. Code § 15.1–23.1, Adelphia obtained a franchise from the City of Charlottesville to provide cable television services in Charlottesville. According to Adelphia, Charlottesville City Code § 6–3 and Va. Code § 15.1–23.1 give it a legally enforceable right to enter any multiple-unit dwelling complex in Charlottesville to provide cable services to tenants therein. The respondents (Owners, CQC, and MSC) claim that the Owners have a right to contract with providers of competing services, like CQC, and, if they choose to do so, to exclude others such as Adelphia from their property. The Owners claim that to compel them to submit to the presence of Adelphia would constitute an unconstitutional taking of private property under the Fifth Amendment to the United States Constitution. That Amendment provides that private property shall not be taken by the government without just compensation. The Owners contend that enforcement of § 6–3 requiring them to surrender their property rights to Adelphia without compensation constitutes an unconstitutional taking.

The limited issue this Court is asked to decide at this time is whether, during the pendency of this suit, the Court should enjoin the Owners from refusing to permit Adelphia continued access to these buildings while the court is considering the merits of the underlying claim. The requested temporary injunction would not bar the installation of CQC's services but would prevent the Owners from terminating Adelphia's access.

A temporary injunction is an extraordinary remedy. It is an order to be issued by the Court only under the most compelling circumstances. *Wright v. Castles*, 232 Va. 218 (1986); *N.A.A.C.P. v. Committee on Offenses Against Administration of Justice*, 201 Va. 890 (1960). In Virginia, complainants must show that they will suffer irreparable harm if the injunction is denied, that there is a substantial likelihood that they will prevail on the merits, and that a balancing of the equities between the complainants and the respondents weighs in their favor. *Capitol Tool & Mfg. v. Maschinenfabrik Herkules*, 837

F.2d 171 (4th Cir. 1988). For the reasons set out below, the request for the temporary injunction is denied.

### Irreparable Harm

Adelphia alleged two types of injury which warrant temporary injunctive relief. First, it argues that anticipated loss of revenues from these buildings during the pendency of this suit cannot be precisely calculated. This argument, however, is unpersuasive at this time. Complainant's pleadings indicate that the company receives an average of $25.85 per customer per month (Para. 3). Further, the pleadings show the average number of subscribers in each of the Owners' buildings (Para. 4). While the precise calculation of damages may be impossible, Adelphia's pleadings demonstrate that an accurate approximation is available if it subsequently prevails. Even if not precisely determinable, complainant's economic loss, unless it threatens the existence of the business itself, generally is not considered irreparable. *Housing Study Group, et al. v. Kemp*, 736 F. Supp. 312, 320 (D. D.C. 1990).

Adelphia also claims the possible loss of community goodwill and possible confusion resulting from the removal of Adelphia from these buildings and its subsequent reappearance if successful in this litigation. Besides a single affidavit from a customer expressing a desire to retain Adelphia's services, there is nothing more in the record to show that any such injury will occur or, if it does, that it is sufficiently serious to warrant the requested injunction.

### The Merits of Complainant's Claim

Having reviewed the pleadings, affidavits, and relevant case law, the Court at this time is not persuaded that Adelphia has shown a substantial likelihood of prevailing on the merits.

Respondents contend that a statute requiring them to give a permanent physical easement to Adelphia is a taking violating the Fifth Amendment to the U.S. Constitution and which is made applicable to the Commonwealth of Virginia by the Fourteenth Amendment. The Fifth Amendment provides that private property may not be taken by governmental authorization without just compensation. In deciding a case based on similar facts, the United States Supreme Court held that a "permanent physical occupation authorized by the government is a taking without regard to the public interests that it

may serve." *Loretto v. Manhattan Teleprompter CATV Corp.*, 458 U.S. 419, 426 (1982). Based on the facts presented, there is no question that § 6–3 is a permanent physical occupation authorized by Charlottesville that requires compensation.

Complainant recognizes that this is a taking under the terms of *Loretto, supra*, but points out that Charlottesville City Code, § 6–3(b), does require payment of "just and reasonable compensation for such access." However, condemnation is an extremely complex and well-regulated process. This Court is unable to say that the single sentence in § 6–3(b) authorizing compensation for Owners can be deemed to be the equivalent of the elaborate restrictions generally placed upon eminent domain proceedings.

From the evidence before the Court, there is also a question whether Adelphia has eminent domain authority. Virginia Code authorizes municipalities (Va. Code § 15.1–236) and public service companies (Va. Code § 56–49) to condemn private property in eminent domain proceedings. Adelphia does not appear to qualify under either provision. Although the City of Charlottesville does hold eminent domain power, it is not clear whether the city can delegate the power of eminent domain to Adelphia. The Virginia Supreme Court has indicated that such authority cannot be transferred or redelegated unless expressly authorized to do so by the legislature. *Ruddock v. City of Richmond*, 165 Va. 552, 561–2 (1935). Respondents argue that although the Legislature has authorized municipal corporations to grant cable franchises (Va. Code § 15.1–23.1), it does not affirmatively authorize the municipality to delegate its eminent domain authority. As respondents point out, "[acts] of the legislature delegating to a municipality the power of eminent domain must be strictly construed in favor of the landowner." *Id.* at 562. As Adelphia is attempting to exert this power directly without clear authorization from either the City or the Commonwealth, respondents have raised an issue that will affect complainant's likelihood of success on the merits.

A related issue is whether, as respondents contend, Adelphia is attempting to take the Owners' property for the exclusive benefit of the cable company. Just as the Fifth Amendment permits private property to be taken for public purposes, it does not allow a compensated or uncompensated taking of private property for a private benefit. "It has been universally held that the spirit of the Constitution

of Virginia and the Federal Constitution prohibits the taking of private property for private use under any conditions." *Phillips v. Foster*, 215 Va. 543, 546 (1975). Respondents argue that granting an easement to Adelphia by condemnation will not achieve any public benefit but will instead further the private interests of the cable company.

As CQC has already contracted with the Owners to provide satellite television services, it would appear that no resident of these complexes will be denied access to expanded television programming. As such, respondents claim that under these circumstances, the only beneficiary of the taking of the Owners' property is Adelphia. Respondents have cited case authority from the Michigan Court of Appeals that suggests that guaranteeing access to the franchised cable company against a non-franchised competitor results primarily in a private benefit. *City of Lansing v. Edward Rose Realty*, 481 N.W.2d 795 (Mich. App. 1992).

Virginia case law on the private/public issue does not provide this Court with clear guidance.[1] Although Adelphia properly notes that Charlottesville City Code § 6–3(a) and Va. Code § 15.1–23.1 declare access by the franchised company to be in the public interest, the issue before the Court may not be just whether the public benefits from access to expanded television programming. The question also may be whether access to two competing services serves the same or similar public purposes. And, while the statutes here express the legislative view that such access serves a public purpose, when challenged that determination should be made by the Courts. *Burns v. Board of Supervisors*, 218 Va. 625, 628–9 (1977). Without passing on the merits of this argument, this Court agrees that Adelphia cannot take private property for private use and that respondents have

---

[1] *See, e.g., Rudder v. Housing Authority*, 219 Va. 592 (1978) (condemnation of private property to clear a blighted area deemed a public benefit, even though much of the cleared land would be conveyed to private developers); *Mumpower v. Housing Authority*, 176 Va. 426 (1940) (that private property taken by municipality would be used to compete with a private enterprise does not mean that the taking was for a private benefit); *Phillips v. Foster*, 215 Va. 543 (1975), (statute allowing taking of property to create a drainage ditch that would permit private development of a residential community is a private benefit); *Burns v. Board of Supervisors*, 218 Va. 625 (1977) (taking land to create a drainage ditch to permit a private development held to be a public benefit because the easement was held by the city).

met the burden of negating complainant's claim of a substantial likelihood of success.

Finally, respondents contend that any eminent domain power that the complainant might otherwise have obtained from the City of Charlottesville as the franchised cable company cannot be exercised by Adelphia, as it is a foreign (out-of-state) corporation. Article IX, Section 5, of the Virginia Constitution provides, "No foreign corporation shall be authorized to carry on in this Commonwealth the business of, or to exercise any of the powers or functions of, a public service enterprise . . . ." This language is an amended version of § 163 of the 1902 Constitution and carries over the essential meaning of its predecessor. A. E. Dick Howard, *Commentaries on the Constitution of Virginia*, vol. II, p. 997 (1974).

Interpreting the prior language, the Virginia Supreme Court agreed that the clause acted to bar out of state companies from exercising otherwise valid eminent domain powers. *Colonial Pipeline Co. v. Commonwealth*, 206 Va. 517 (1965). Adelphia's pleadings show that it is an Ohio corporation. This is yet another reason why, based on the pleadings, the complainant has not demonstrated that it is likely to prevail on the merits.

In conclusion, based on the pleadings, cases, affidavits, and briefs submitted, this Court finds that the complainant has not proved either of the two principal elements needed to justify the granting of an injunction: irreparable harm and a substantial likelihood of prevailing on the merits. Accordingly, the motion for a temporary injunction is denied.