## CIRCUIT COURT OF THE CITY OF NORFOLK

Sharon Elsey

v.

City of Norfolk
and Federal APD, Inc.

September 15, 2003

Case No. (Law) L03-756

BY JUDGE CHARLES E. POSTON

Today the Court denies the City of Norfolk's Special Plea of Governmental Immunity. The Court holds that the City of Norfolk's maintenance of a parking gate arm at the exit of one of its parking garages is a proprietary function, thus precluding the City from invoking sovereign immunity to bar Plaintiff's personal injury action.

On April 30, 2001, Plaintiff, Sharon Elsey, parked her motorcycle in the Waterside Parking Garage owned by the City of Norfolk. Access to this garage is open generally to the public and payment of a fee is required upon exit. As the Plaintiff exited the parking garage, she was allegedly struck on the head by the parking gate arm. As a result of this incident, on March 27, 2003, Plaintiff brought suit to obtain compensation for her injuries against the City of Norfolk and Federal APD, Inc., the maker of the parking gate arm.

*Discussion*

The City does not dispute the assertion that the general maintenance and operation of a parking garage is a proprietary function. It conceded that much in oral argument and such a conclusion is consistent with *Miller v. City of Norfolk*, 57 Va. Cir. 22 (Norfolk 2001) (Martin, J.). The question in this case

is whether the maintenance and operation of the parking gate arm itself is a proprietary or governmental function. If the parking gate arm can be classified as a traffic control device, its maintenance and operation would be a governmental function and the City of Norfolk could rely upon sovereign immunity as a defense.

In its special plea, the City claims that, for *regulation purposes*, its public parking garages are an extension of its streets because their existence relieves traffic congestion in the city (*City of Richmond v. Dervishian*, 190 Va. 398, 406 (1950), and are governed by the same traffic control law, Code of Virginia § 46.2-101. The City argues, just as the lines painted on the parking garage floor regulate the flow of traffic and the pattern of parking, the parking gate performs a similar traffic control function.

The dividing line for determining whether a municipality shall be liable for its actions in carrying out any of its exhaustive number of tasks was explicated in *Fenon v. City of Norfolk*:

> In Virginia a municipal corporation is clothed with a two-fold function: one governmental and the other proprietary. A municipality is immune from liability for failure to exercise or for negligence in the exercise of its governmental functions. It may be liable, just as a private individual or corporation, for the failure to exercise or for negligence in the exercise of its proprietary functions.

203 Va. 551 (1962). The distinction between governmental and proprietary functions turns upon, among other things, "whether the act is for the common good of all without the element of special corporate benefit, or pecuniary profit." *Hoggard v. Richmond*, 172 Va. 145 (1939). Further, a "function is considered governmental if it is the exercise of an entity's political, discretionary, or legislative authority. If the function is a ministerial act, 'assumed in consideration of the privileges conferred by … charter,' and involves no discretion, it is proprietary." *Carter v. Chesterfield County Health Comm'n*, 259 Va. 588, 591 (2000) (citation omitted).

Generally the maintenance and repair of city streets necessary to enable safe travel is a proprietary function requiring local governments to exercise reasonable care in carrying out these duties. *City of Norfolk v. Hall*, 175 Va. 545, 552 (1940) ("[A]lthough [a city] is not an insurer against accidents on its streets, a city is liable for injuries sustained by reason of its failure to keep

them in a reasonably safe condition for persons who exercise ordinary care and prudence for their own safety."). But this is not a blanket rule and exceptions have developed. *Transportation, Inc. v. City of Falls Church*, 219 Va. 1004, 1005-06 (1979). *See also Fenon, supra* (city was immune from liability as a result of not having properly removed fallen trees from city streets following a hurricane); *Harrell v. City of Norfolk*, 265 Va. 500 (2003) (white lines delineating the pedestrian crossing and upon which the plaintiff slipped were regulatory in nature and thus governmental).

In *Transportation, Inc.*, the municipality failed to repair a malfunctioning traffic signal. In granting the municipality immunity, the court stated:

> [T]he repair of a malfunctioning traffic signal bears some relationship to street maintenance and displays, therefore, a characteristic of a proprietary function. But a system of signals is designed to regulate traffic, and its dominant purpose is to reduce loss of life, limb, and property by preventing vehicular and pedestrian accidents at intersections. Thus, in the activity of maintaining traffic signals, as with the removal of the fallen trees in *Fenon*, there is involved "the purpose of protecting the general public health and safety," a distinguishing feature of a governmental function. And, "where governmental and proprietary functions coincide, the governmental function is the overriding factor."

*Transportation, Inc.*, 219 Va. at 1006 (quoting *Taylor v. Newport News*, 214 Va. 9, 10 (1973)). A year later, the Supreme Court of Virginia further explained its ruling in *Transportation, Inc.* and attempted to define the term "traffic signal." It said, "Traffic lights, blinking lights, warning signals, roadway markings, railings, barriers, guardrails, curbings, and like devices are all designed to control and regulate traffic and to insure its orderly and safe flow on the streets." *Freeman v. Norfolk*, 221 Va. 57 (1980). The court stated that because discretion lies with a locality on whether and where to install such devices, the locality should be immune from liability in performing this function. *Id.*

*Conclusion*

The Court concludes that the parking gate arm in the case at bar does not meet the "traffic signal" definition set out by the Supreme Court of Virginia because it serves little to no regulatory purpose. It cannot be claimed that the gate arm's existence is for the common good of the residents of the City of Norfolk. Even more, it scarcely exists for the good of those pedestrians who walk in front of the exit at their own peril; the parking gate arm rises and descends independently of the state of pedestrian traffic on the adjacent sidewalk. Instead, as the Parking Administrator for the City of Norfolk herself testified, the arm's ascent and descent are tied to the closing of the cash register in the collection booth. Thus, it is clear that the purpose of the arm is simply to allow the City to collect revenue in its administration of a decidedly corporate task.

Because the parking gate arm's purpose is purely proprietary, the City of Norfolk should not be shielded from liability arising from its maintenance and operation of the parking gate arm. The City's Special Plea of Governmental Immunity is therefore denied.