# CIRCUIT COURT OF THE CITY OF ALEXANDRIA

City of Alexandria

 v.

Hoffman Family, L.L.C.

Case No. CL04001606

City of Alexandria

 v.

Peggy L. Hoffman,
Hubert N. Hoffman, III,
and Linda L. Hoffman

Case No. CL04001607

July 5, 2005

BY JUDGE LISA B. KEMLER

On Friday, June 10, 2005, this Court heard argument and received evidence on the issue of the Hoffman Respondents' plea in bar to the condemnation proceeding in these matters. The Court took under advisement the issues and evidence, and, having reviewed the materials submitted in memoranda, evidence from the hearing, and further reflection on the issue, this Court overrules the Respondents' plea in bar.

The issue presented in this case is whether the taking in this case was sought for a public use or for a private purpose. Respondents contend that the

purpose for the relocation of the storm sewer box culvert was to convey a financial benefit to the developer on the Mill Race Site Number One to the detriment of the neighboring landowner, the Respondents. Because, according to the Respondents, such action on the part of the City constitutes an improper use of its zoning powers, the City improperly effectuated a quick-take of the Respondents' land and that impropriety should bar this Court's holding of a Jury Commissioner hearing to set the value of the taken land. The City contends that it has properly exercised its power of eminent domain under Title 15.2 of the Code of Virginia. Specifically, Va. Code Ann. § 15.2-1902 vests localities with the right to exercise the power of eminent domain to acquire lands or easements for streets and roads and drainage facilities and § 15.2-1904 permits a locality to enter upon and take possession of property before the conclusion of condemnation proceedings "for public purposes of (i) streets and roads, (ii) drainage facilities. . . ." In addition, Va. Code Ann. § 15.2-2109 authorizes the City to acquire "whatever land may be necessary for acquiring, locating, establishing, maintaining, operating, extending, or enlarging . . . storm water management systems and other public utilities. . . ." Thus, the City argues that it has the statutory authority to condemn the Respondents' land in order to relocate a storm sewer box culvert from the Mill Race Site Number One property to the public street that was created as part of the interconnected grid of secondary urban streets which is one of the goals of the Eisenhower East Small Area Plan ("EESAP") adopted by the City in April 2003. As such, it is the City's position that the takings at issue herein are for a public purpose.

This Court begins with the well-settled law that we must, at the outset, presume the legitimacy of the City's expressed finding, as set forth in City Counsel Resolution No. 2100, that the contemplated use is "for public uses and purposes," but recognize that the courts have a role in reviewing such legislative action. *City of Richmond v. Dervishian*, 190 Va. 398, 405, 57 S.E.2d 120 (1950); *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 240, 104 S. Ct. 2321, 81 L. Ed. 2d 186 (1984) ("There is, of course, a role for courts to play in reviewing a legislature's judgment of what constitutes a public use, even when the eminent domain power is equated with the police power."). There is, however, a limit to the review vested in the judiciary and this Court will not "substitute its judgment for a legislature's judgment as to what constitutes a public use unless the use be palpably without reasonable foundation." *Midkiff*, 467 U.S. at 241. In *Midkiff*, the Court stated that, so long as "the exercise of eminent domain power is rationally related to a conceivable

public purpose," the Public Use Clause will not proscribe a compensated taking. *Id.*

This Court is aware of the many Virginia Supreme Court opinions that form the metes and bounds of a proper public use taking, and those positions form the basis of the Court's decision. First, "[i]t has been universally held that the spirit of the Constitution of Virginia and the Federal Constitution prohibits the taking of private property for private use under any conditions." *Phillips v. Foster*, 215 Va. 543, 546, 211 S.E.2d 93 (1975) (holding that a statute-authorized "private taking" for private use was an improper taking because the public would receive only an incidental benefit). The end result in the *Phillips* Case must be balanced by the Court's reasoning leading up to that decision:

> The salient consideration is not whether a public benefit results, but whether a public use is predominant. . . . It is of no importance "that the public would receive incidental benefits, such as usually spring from the improvement of lands or the establishment of prosperous private enterprises; the public use implies a possession, occupation, and enjoyment of the land by the public at large, or by public agencies. . . ."

*Phillips*, 215 Va. at 547 (quoting from 2 *Cooley's Constitutional Limitations* 1126-29 (8th ed. 1927)).

The Virginia Supreme Court has provided some guidance for determining the nature of a taking and whether it is for a public use or a private benefit.

> The great weight of authority holds that the term "public use" under the law of eminent domain means that there must be a right on the part of the public, or some portion of it, or some public agency, to use the property after it is condemned, and the right to the use must exist as a matter of right and not a favor.

*Light v. City of Danville*, 168 Va. 181, 201, 190 S.E. 276 (1937) (holding that a power plant constructed to supply power to the locality in which it was built does not become a private use when power generated there is sold also to persons outside that locality). The *Light* Court defined the contours of the term "public use":

> A use to be public must be fixed and definite. It must be one in which the public, as such, has an interest, and the terms and manner of its enjoyment must be within the control of the State, independent of the rights of the private owner of the property appropriated to the use. The use of property cannot be said to be public if it can be gainsaid, denied, or withdrawn by the owner. The public interest must dominate the private gain.

*Light*, 168 Va. at 201 (citing *Nichols v. Central Virginia P. Co.*, 143 Va. 405, 130 S.E. 764 (1925)). Subsequently, the Supreme Court explained that "the fact that property acquired to serve the public may also incidentally benefit some private individuals does not destroy the public character of the use." *City of Richmond v. Dervishian*, 190 Va. 398, 407, 57 S.E.2d 120 (1950) (holding that the lower court properly found that a parking lot was acquired for a public use, despite the argument that the lot will primarily benefit two nearby retail stores). Most recently, the U.S. Supreme Court decided the case *Kelo v. City of New London*, 545 U.S. ---, 125 S. Ct. 2655, 162 L. Ed. 2d 439 (2005), holding that a city's decision to take property for the purpose of economic development qualifies as a public use for purposes of the Takings Clause of the Fifth Amendment to the U.S. Constitution. In *Kelo*, the Court pointed out that the "takings [at issue] would be executed pursuant to a carefully considered development plan." (Slip Op. at 7.) (Citation omitted.) Finally, harkening back to its earlier decision in *Hawaii Housing Auth. v. Midkiff*, *supra*, the *Kelo* Court stated " `[i]t is only the takings purpose, and not its mechanics,' we explained, that matters in determining public use." (Slip Op. at 11, quoting from *Hawaii Housing Auth. v. Midkiff*, 467 U.S. at 244.)

The parties presented evidence from experts and City staff regarding the possible placements of the storm sewer box culvert and the possible uses for the site designated as Mill Race Site Number One, but those possibilities are not strong enough evidence for this Court to substitute its judgment for that of the City Counsel's legislative power to proclaim a public use. (See *West Brick Brothers Co. v. Alexandria*, 169 Va. 271, 288, 192 S.E. 881 (1937), in which the Court declined to "second-guess the lawmakers on matters of economics, sociology, and public policy" as "[t]hose considerations belong exclusively in the legislative domain.") Based on the evidence presented, this Court finds that the evidence shows that the purpose of the taking is to facilitate proper storm water runoff into the City's storm sewer system. As such, this Court must, therefore, find public use predominating any private benefit. Regardless of any incidental benefit that may flow to the

developer of Mill Race Site Number One by the movement of the existing storm sewer box culvert, the purpose is clearly a public use as the City decreed and is not palpably without reasonable foundation. The storm sewer box culvert specified for this location is for the public use, will be held by the City, the terms and manner of enjoyment of the sewer are within the control of the City, and it will benefit the public. The fact that the underlying motivation for the relocation of the storm sewer box culvert is the implementation of the EESAP and to promote the orderly and proper development of the EESAP in accordance with the Small Area Plan and the Special Use Permits approved for Mill Race does not, in this Court's view, diminish the public use of the taking. This Court cannot replace a public use finding with speculation as to the propriety of other potential placements in the vicinity of the planned streets for that would be an abuse of this Court's oversight power.