Present:    All the Justices

FRANK J. OTTOFARO, ET AL.
                              OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 020101            January 10, 2003

CITY OF HAMPTON

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Christopher W. Hutton, Judge

I.

The primary issues that we consider in an appeal of a

judgment entered in a condemnation proceeding are whether a

city condemned private property for a public purpose, and

whether a city council's condemnation resolution complied with

the applicable law.

II.

In September 1999, the City Council for the City of

Hampton adopted a resolution that authorized the acquisition

of several parcels of land, including two parcels owned by

Frank J. Ottofaro and Dora J. Ottofaro (the landowners).  The

City filed a certificate of take against the Ottofaros'

property as permitted by Code §§ 33.1-119 through -132.  The

City deposited $164,000, the estimated fair market value of

the property, in the clerk's office of the circuit court

contemporaneously with the filing of a certificate of take.

Subsequently, the City filed its petition for

condemnation, and the Ottofaros filed responsive pleadings

which included certain affirmative defenses to the City's condemnation proceeding. The Ottofaros sought an injunction to prevent the City from destroying a small rental house on their property. The circuit court conducted an evidentiary hearing on the request for injunctive relief and denied the Ottofaros' request.

Later, the circuit court conducted an ore tenus hearing and at the conclusion of the hearing, the court rejected the Ottofaros' defenses. The Honorable Wilford Taylor, Jr., judge of the Circuit Court of the City of Hampton, presided during this hearing. The circuit court held that the City Council's resolution was valid, that the City Council had not unlawfully delegated authority to its city attorney, that the resolution recited a public purpose, and that the City Council complied with the requirements of Code § 33.1-91, which permits the taking of residential property outside a designated right-of-way. A different judge, the Honorable Christopher W. Hutton, presided over the trial to determine just compensation. At the conclusion of that trial, the commissioners returned a report in favor of the landowners in the amount of $170,000. The circuit court entered a judgment confirming the commissioners' report, and the landowners appeal.

III.

2

In 1989, the City Council for the City of Hampton adopted a comprehensive plan that, among other things, identified a proposed arterial roadway that would connect Queen Street with another throughway.  The City Engineer for the City of Hampton, James F. Whitley, approved a plan dated August 1999 that contained the proposed road alignment which would traverse the landowners' property.  Eventually, a road was constructed that, with the exception of certain minor changes, has the same alignment in relation to the landowners' former property as shown on the August 1999 plan.

On September 22, 1999, the City Council approved a resolution that stated a need to acquire property for the construction of a "new arterial network."  The City Council stated in its resolution that it was "necessary to acquire property to be used for the construction of improvements to the intersection of West Mercury Boulevard and West Queen Street, for the construction of improvements to the intersection of Pine Chapel Road and West Queen Street; and property acquisition incidental to these named improvements which are consistent with the City's Comprehensive Plan . . . ."  The resolution authorized the City Attorney to acquire numerous properties, by negotiation or condemnation, including Parcels 23 and 24 that the landowners owned.  These

3

parcels consisted of a total of about three-quarters of an acre.

According to the resolution, "construction of the new roadways and improvements to existing roadways will serve a public purpose by improving the City's transportation network; by providing improved access to underutilized property within the City of Hampton; and by reducing the traffic flow along the portion of West Queen Street that abuts a residential area . . . ."

Approximately two months after the City Council adopted its resolution, the Hampton Industrial Development Authority, a political subdivision of the Commonwealth, executed a development agreement with Hampton Roads Associates, L.L.C., for the development of property in the area where the landowners' former property is located. The City of Hampton is not a party to this agreement. Pursuant to the terms of the agreement, Hampton Roads Associates (the developer) would develop several acres of land with frontage on the new road. The Industrial Development Authority stated in the agreement "that the City has, to the extent it has jurisdiction, authorized the undertakings set forth in this Agreement and the expenditure and distribution of the [Industrial Development Authority] Allowance in accordance with the provisions of this Agreement." Additionally, the agreement

required that the Industrial Development Authority "shall exercise its best efforts to cause the City to acquire the Road Improvement Parcels . . . pursuant to eminent domain proceedings or by consensual agreement with the property owners so that the construction of the Road Improvements may proceed."

The agreement stated, however, that "[t]he Developer acknowledges and agrees that the City may only exercise its power of eminent domain when there is a direct showing of public purpose and need, and the power may only be exercised for property which is necessary for the Road Improvements and related infrastructure improvements and additions." The City's retail development manager, Kathy Grook, testified that the City had "no obligation with the [Industrial Development Authority] to proceed with condemnation" under the terms of the agreement.

Pursuant to the terms of the agreement, the developer was required to create site plans, as well as design and construct the necessary road improvements, which were required to comply with standards promulgated by the City. The City Engineer testified that typically a developer will prepare an alignment plan for a future road and submit it to the City's engineering office for review and approval. Once the developer has constructed a road, the City will inspect the road, and if it

5

meets the City's standards, the City may accept the road by dedication or condemnation, and the road will become a public road under the ownership and control of the City.

It is undisputed that the road constructed on the landowners' former parcels is owned and controlled by the City and is open for public use. The City Engineer estimates that by the year 2018, approximately 26,000 motor vehicles will use the road daily.

IV.

A.

The landowners argue that the City lacked a public purpose to condemn their former property, and that the underlying reason for the condemnation was that the City actually desired to acquire the property and convey it to a developer that would create a retail shopping center. Continuing, the landowners point out that only 18% of their former property will be used for the construction of the road and that the residue will be leased to the developer for private purposes. Responding, the City asserts that the landowners' property was condemned for public use and that the residue of the property will not be transferred to a private entity for a private purpose.

Initially, we observe that the issue "whether a taking is for a public purpose is a judicial question, reviewable by the

6

courts. . . ." Hamer v. School Bd. of Chesapeake, 240 Va. 66, 70, 393 S.E.2d 623, 625 (1990); accord City of Richmond v. Carneal, 129 Va. 388, 394, 106 S.E. 403, 405 (1921) ("[W]hat constitutes a 'public use' is a judicial question to be decided by the courts."). And, contrary to the City's contention, the fact that the City filed with its petition for condemnation a resolution that stated that the landowners' property would be taken for a public use does not bar judicial review of the issue of public use.

The principles pertinent to our resolution of the issue whether the landowners' former property was taken for a public use are well established. We have stated that

> "the public use implies a possession, occupation, and enjoyment of the land by the public at large, or by public agencies; and a due protection to the rights of private property will preclude the government from seizing it [from] the hands of the owner, and turning it over to another on vague grounds of public benefit to spring from the more profitable use to which the latter may devote it."

Phillips v. Foster, 215 Va. 543, 547, 211 S.E.2d 93, 96 (1975). We have also stated recently that "[t]o be public, a use must be one in which the terms and manner of its enjoyment are within the control of the governing body. The public interest must dominate any private gain." Town of Rocky Mount v. Wenco of Danville, Inc., 256 Va. 316, 322, 506 S.E.2d 17, 21 (1998); accord Phillips, 215 Va. at 547, 211 S.E.2d at 96;

7

Rudee Inlet Auth. v. Bastian, 206 Va. 906, 911, 147 S.E.2d 131, 135 (1966); Mumpower v. Housing Auth. of Bristol, 176 Va. 426, 448, 11 S.E.2d 732, 740 (1940); Nichols v. Central Va. Power Co., 143 Va. 405, 415-16, 130 S.E. 764, 767 (1925).

Applying the aforementioned principles, we hold that the circuit court correctly concluded that the City condemned the landowners' property for a public purpose. The evidence is uncontroverted that the City owns the road, and that the road is open for use to the public. The City anticipates that by the year 2018, approximately 26,000 vehicles will use the road daily. The City authorized the acquisition of land for construction of the road for the reasons enumerated in its 1989 comprehensive plan, which included a need for a road that would serve as a "connector" to other public roads. The resolution adopted by the City Council authorized the condemnation of the landowners' property for the purposes of improving the City's transportation network, reducing traffic flow, and improving access to underutilized property within the City.

Contrary to the landowners' contention, there is no evidence in the record that suggests that the residue of the landowners' former property will be conveyed to a private entity. Rather, according to the record, the City may transfer the residue of the landowners' former property to the

8

Hampton Industrial Development Authority, a political subdivision of the Commonwealth, which will lease the property to a private developer.

B.

The landowners also argue that the City's condemnation resolution is "fatally defective in that it failed to fix the location of the road with certainty or definiteness, and the City Council improperly delegated to the City Attorney the power to acquire what was 'necessary.' " Continuing, the landowners contend that Code § 25-46.7 requires a petition for condemnation "to include 'a description of the work or improvements to be made' " and that Code § 15.2-1903 "requires that any enabling resolution describe 'the use to which the property will be put.' " The landowners argue that "[t]he City has consistently failed to generate any specific information regarding the location of the road." We disagree with the landowners' contentions.

Code § 15.2-1903(B) states:

> "Prior to initiating condemnation proceedings, the governing body shall adopt a resolution or ordinance approving the proposed public use and directing the acquisition of property for the public use by condemnation or other means. The resolution or ordinance shall state the use to which the property shall be put and the necessity therefor."

The resolution adopted by the City Council stated that the landowners' property would be condemned for the construction

9

of a road that would, among other things, improve the City's transportation network, provide access to underutilized property within the City, and reduce traffic flow within the City. The resolution also directed the acquisition of the property for public use. We find no requirement in Code § 15.2-1903 that directs the City to include in its resolution a fixed and definite description of a road that it seeks to construct for a public purpose. We do note, however, that the circuit court made a finding of fact that the location of the road "was fixed and definite since 1989." The landowners do not assign error to the circuit court's finding, and we note that this finding is supported by the evidence of record.

We also reject the landowners' contention that the City Council's resolution improperly delegated to the City Attorney the right to exercise the City's condemnation power. The landowners argue that the City Attorney was authorized to condemn the necessary rights-of-way from the landowners although the City failed to designate the locations of the rights-of-way. Thus, the landowners assert that the terms of the resolution constituted an illegal delegation of the City Council's legislative power.

The City Council's resolution stated in part

"that the City Attorney be and is hereby authorized and directed to institute negotiations and condemnation proceedings as authorized by the Code

10

of Virginia . . . for the acquisition of the necessary rights-of-way (and, within the limitations and conditions of Section 33.1-91 of the Code of Virginia of 1950, as amended, entire tracts upon which such rights-of-way shall be located) from the land owners which are designated on the attached Exhibit 'A', but nothing in this resolution shall be construed as preventing negotiation by the City Attorney and/or City Manager for the purchase of any and all of said property at a private sale should the owners there agree to sell at the prices offered."

Contrary to the assertions of the landowners, the City's resolution did not confer the power of condemnation upon its city attorney. Rather, the language at issue in the resolution simply directed the city attorney to acquire the entire tracts of land upon which the road would be located, but only if the requirements of Code § 33.1-91, which imposes certain limitations upon the City's power to condemn the residue, were satisfied. The resolution did not give the city attorney any discretion to decide how much land to acquire by condemnation.

Our decision in Ruddock v. City of Richmond, 165 Va. 552, 178 S.E. 44 (1935), upon which the landowners rely, has no application in this case. In Ruddock, we invalidated a resolution that authorized a city attorney to seek the condemnation of land because the resolution permitted that city attorney to acquire property that had not been designated in the resolution. The petition for condemnation that we

11

reviewed in Ruddock described property that was not contained in the resolution that authorized the condemnation proceeding. We held that the resolution was invalid because it improperly delegated the city council's exclusive power of condemnation to the city attorney. Id. at 561, 178 S.E. at 47. Unlike the circumstances in Ruddock, the resolution authorizing the condemnation proceedings in this case specifically identified the parcels subject to condemnation and specifically authorized the city attorney to acquire the landowners' entire properties as permitted by Code § 33.1-91. The resolution adopted by the Hampton City Council did not delegate the City's condemnation power to its city attorney.

We disagree with the landowners' contention that the City's resolution condemning the residue violated Code § 33.1-91. This statute permits a city, in the acquisition of rights-of-way for road construction and land incidental to that construction, to exercise the power of eminent domain upon an entire tract of land or any part thereof

> "whenever the remainder of such tract or part
> thereof can no longer be utilized for the purpose
> for which the entire tract is then being utilized,
> or a portion of a building is to be taken or the
> cost of removal or relocation of the buildings, or
> other improvements on the remaining portion,
> necessitated by the taking, would exceed the cost of
> destroying such buildings or other improvements, or
> the highway project will leave the remaining
> portions without a means of access to a public
> highway . . . provided, however, that the [City]

12

shall not acquire the remainder of such tracts . . .
by condemnation where the remaining portion is in
excess of two acres."

As the City correctly points out, it was entitled to obtain
the residue to the landowners' tracts because the City
satisfied the requirements prescribed in Code § 33.1-91, which
governs the taking of residual property.  The City asserts,
and the landowners do not disagree, that the residue of the
landowners' former tracts is less than two acres and "can no
longer be utilized for the purpose for which the entire tract
[was] then being utilized," in this instance, residential
rental property.  Additionally, the remaining portion of the
former tracts would not have a means of access to a public
highway.

We cannot consider the landowners' arguments that the
City condemned their former property for the purpose of
facilitating the construction of a commercial shopping center.
This contention is not the subject of an assignment of error
and, therefore, may not be considered in this appeal.  Rule
5:17(c).

V.

In view of our holdings, we need not consider the
litigants' remaining arguments.  Accordingly, we will affirm
the judgment of the circuit court.

Affirmed.

JUSTICE KINSER, with whom JUSTICE LEMONS joins, dissenting.

I disagree with the majority's conclusion that "the resolution authorizing the condemnation proceedings in this case . . . specifically authorized the [C]ity [A]ttorney to acquire the landowners' entire properties as permitted by Code § 33.1-91." Instead, the City Council for the City of Hampton authorized the City Attorney to determine whether the property owned by Frank J. Ottofaro and Dora J. Ottofaro satisfied the requirements of Code § 33.1-91. By delegating this authority to the City Attorney, the City Council allowed the attorney to make the decision whether to acquire only a portion of the Ottofaros' property or their entire parcels.

The provisions of Code § 33.1-91 permit the condemnation of an entire tract of real estate when the remaining portion is less than two acres and one of the following conditions is present:

> [T]he remainder of such tract or part thereof can no longer be utilized for the purpose for which the entire tract is then being utilized, or a portion of a building is to be taken or the cost of removal or relocation of the buildings, or other improvements on the remaining portion, necessitated by the taking, would exceed the cost of destroying such buildings or other improvements, or the highway project will leave the remaining portions without a means of access to a public highway, or whenever in the judgment of the Commissioner the resulting damages to the remainder of such tract or part thereof lying outside the proposed right-of-way, or the area being acquired for a purpose incidental to the construction, reconstruction or improvement of a public

14

highway, will approximate or equal the fair market value of such remaining lands[.]

In the resolution at issue, the City Council authorized the City Attorney to "institute negotiations and condemnation proceedings . . . for the acquisition of the necessary rights-of-way (and, within the limitations and conditions of Section 33.1-91 of the Code of Virginia of 1950, as amended, entire tracts upon which such rights-of-way shall be located) from the land owners which are designated on the attached Exhibit 'A'[.]"  Noticeably absent from the resolution is any finding by the City Council that the residue of the Ottofaros' property fulfilled the requirements of Code § 33.1-91.  Even the majority implicitly recognizes this omission.  The majority states that "the language at issue in the resolution simply directed the [C]ity [A]ttorney to acquire the entire tracts of land upon which the road would be located, but only if the requirements of Code § 33.1-91 . . .  were satisfied." (Emphasis added).  Because the determination whether those requirements were fulfilled had not yet been made and the City Council failed to do so, the City Attorney, rather than the City Council, made the final decision whether to acquire the Ottofaros' entire tracts or just the portions needed for the right-of-way.

"[A]n act of the legislature delegating to a municipality the power of eminent domain must be strictly construed in favor of the landowner."  Ruddock v. City of Richmond, 165 Va. 552, 562, 178 S.E. 44, 47 (1935).  "The power can only be exercised for the purpose, to the extent, and in the manner provided by law."  Bristol Redevelopment & Housing Auth. v. Denton, 198 Va. 171, 178, 93 S.E.2d 288, 293 (1956); see also City of Richmond v. Childrey, 127 Va. 261, 268, 103 S.E. 630, 631 (1920) ("one claiming the power must bring himself strictly within the grant, both as to the extent and manner of its exercise").  In Ruddock, we quoted with approval the principle that "[w]hen the legislature delegates the right to exercise the power of eminent domain the grantee of the power cannot surrender, transfer or redelegate the same to another unless expressly authorized by the statute conferring the power."  165 Va. at 561-62, 183 S.E. at 47.

Pursuant to Code § 15.2-1902, the General Assembly authorized localities to exercise the power of eminent domain in accordance with certain procedures.  One of those procedures mandates that, "[p]rior to initiating condemnation proceedings, the governing body shall adopt a resolution or ordinance approving the proposed public use and directing the acquisition of property for the public use by condemnation or other means."  Code § 15.2-1903(B) (emphasis added).  A

16

resolution cannot "direct[] the acquisition of property" without specifying whether only a portion of a tract of real estate needed for a specific project shall be condemned or whether the entire parcel shall be acquired pursuant to Code § 33.1-91. The General Assembly has not authorized the City of Hampton to delegate to the City Attorney the power to decide how much of a property owner's real estate to condemn. That decision must be made by the City Council and reflected in its resolution.

Accordingly, I conclude that, in the resolution presently before us, the City Council for the City of Hampton improperly redelegated its power of eminent domain to the City Attorney. For that reason, I would reverse the judgment of the circuit court and dismiss the petition for condemnation.