## CIRCUIT COURT OF THE CITY OF NORFOLK

Norfolk Redevelopment
and Housing Authority

v.

C and C Real Estate, Inc.

April 21, 2005

Case No. (Law) L03-2604

BY JUDGE JOHN C. MORRISON

This case comes before the Court for a determination of whether property owned by C and C Real Estate can be acquired by eminent domain. The parties have submitted briefs and the Court has heard oral arguments. The Court has examined every jot and title submitted by the parties and, for the reasons explained below, finds that the Norfolk Redevelopment and Housing Authority cannot acquire by eminent domain the property owned by C and C Real Estate.

The Norfolk Redevelopment and Housing Authority (NRHA) condemned real estate owned by C and C Real Estate, Inc. The property currently contains a family business trading as Downtown Used Auto Parts. The property was condemned according to the Mid-Town Industrial Conservation Plan, which was adopted on October 18, 1988, by the Norfolk City Council. The resolution, which was adopted by Norfolk City Council, authorized NRHA to acquire property located within the Mid-Town Industrial Conservation Project area.

In 1988, when the Conservation Plan was written and adopted by Norfolk City Council, the property, now owned by C and C Real Estate, was owned by Mr. Aks. At the time the plan was adopted, trash and litter covered

the junkyard. The Conservation Plan referred to this junkyard as adding to the "blighted condition of the district." Conservation Plan, at 7.

The primary purpose of a conservation plan is to arrest deterioration and revitalize an area within the city. *See* Va. Code Ann. § 36-49.1. Under Virginia Code § 36-50.1(4), eminent domain may be used in order to obtain property that exerts a blighting influence. NRHA indicated that the property owned by C and C Real Estate added to blight in the Midtown Industrial area. Several factors, however, weigh convincingly against allowing the C and C Real Estate property to be taken by eminent domain.

First, the Court looks to the wording of the Conservation Plan. While the Court acknowledges that a Conservation Plan is an outline and does not have to mimic the exact language of the code, the language in the Conservation Plan still cannot be broader than that which is allowed by the code. *See* Va. Code Ann. § 36-51.1.

The code allows housing authorities to use eminent domain in connection with a conservation plan in order to obtain:

> properties which *are* infeasible of rehabilitation or because of dilapidation, obsolescence, faulty arrangement or design, street or lot layout, deleterious land use or a combination thereof exert a blighting influence on adjacent properties or prevent proper development of land so as to *inhibit or prevent* accomplishment of the *purposes* of the conservation plan.

Va. Code Ann. § 36-50.1(4) (emphasis added).

The Conservation Plan allows properties to be taken because "they *appear* infeasible of rehabilitation or their land use is *inconsistent* with the *purposes and objectives* of the Conservation Plan." Conservation Plan, at 13 (emphasis added).

The code allows NRHA to condemn properties which "*are* infeasible of rehabilitation," not properties which "*appear* infeasible of rehabilitation" as stated in the Conservation Plan. "Appears infeasible" can be interpreted more broadly than "is infeasible." This language expands the Authority's ability to condemn property beyond the statutory powers granted by the state. The code limits NRHA's authority to use eminent domain to take properties with land use that prevents "proper development of land so as to *inhibit or prevent* accomplishment of the *purposes* of the Conservation Plan." Va. Code Ann. § 36-50.1(4). The Conservation Plan's condemnation provision identifies for acquisition properties that have a land use *inconsistent* with the "*purposes and objectives*" of the Conservation Plan, as opposed to properties with a land use

that prevents "proper development of land so as to *inhibit or prevent* accomplishment" of only the *"purposes"* of the Conservation Plan. The state code does not include the inhibition or prevention of the accomplishment of the *"objectives"* of the Conservation Plan as a basis for condemning property. The phrase *"purposes and objectives"* is overly broad, and perhaps more importantly, *"inconsistent"* is much broader than *"inhibit or prevent."* (Emphasis added.)

As stated in the property owners' post trial brief at page 34 "the test of the validity of the statute is not merely what has been done under it, but what may be done under it. *City of Richmond v. Carneal*, 129 Va. 388, 392, 106 S.E. 403, 405 (1921), citing *Violet v. Alexandria*, 92 Va. 561, 23 S.E. 909 (1896). Stated differently in the case of *Rudy Inlet Auth. v. Bastian*, "the test of the constitutional validity of the statute is what may be done under it, what it permits." *Rudy Inlet Auth. v. Bastian*, 206 Va. 906, 909-10, 174 S.E.2d 131, 134 (1966).

The Court finds that, by using language which is broader than that allowed in the code, NRHA goes beyond the scope of its statutory authority with the Mid-Town Industrial Conservation Plan as it applies to taking the property of C and C Real Estate by eminent domain.

C and C Real Estate next argues that it was entitled to the written notice of deficiencies provided for in the plan. The Conservation Plan stated that "there [we]re two large junk yards in the area which add[ed] to the blighted condition of the district." Conservation Plan, at 7. One of the junkyards referred to was the Aks junkyard, now the property owned by C and C Real Estate, and the other was the Decker junkyard. In 1990, after the Conservation Plan was adopted, NRHA inspected the Decker junkyard and gave Mr. Decker written notice of the discrepancies and a year to correct them. Neither Mr. Aks nor C and C Real Estate were given written notice of discrepancies and a year to correct the deficiencies in the property.

The Conservation Plan, under the heading of Property Acquisition, reads:

> The Boundary and Land Acquisition Map, Exhibit One, identifies properties to be acquired because they appear infeasible of rehabilitation or their land use is inconsistent with the purposes and objectives of the Conservation Plan.

> Properties within the Project Area will be inspected to determine whether or not they comply with the provisions of the Conservation Plan Rehabilitation Standards. The owners of the

property which does not comply with the Standards will be notified in writing of observed deficiencies and of the need to bring the property into compliance. In the event that the property has not been made to comply with the Standards within one year after receiving a written request for such compliance, then the Authority may proceed to acquire the property by deed or condemnation. The Authority will resort to condemnation only for failure to correct significant discrepancies, by which is meant a discrepancy which affects the safety or health of an occupant or which would have a substantial negative impact upon an economic evaluation of the property.

Conservation Plan, at 13.

NRHA posits that the property owner in this case was not entitled to a one-year letter and that it was unnecessary for the owners of the Decker junkyard to have received the one-year letter. NRHA distinguishes the properties referred to in the second paragraph from properties referred to in the first paragraph because the properties referred to in the first paragraph were properties that had already been identified to be acquired based on the Boundary and Land Acquisition Map, and the second paragraph applied only to properties that had not been previously identified for acquisition on the Map. The C and C Real Estate property had been identified on the Boundary and Land Acquisition Map as property that was to be acquired.

The Court reads the two Conservation Plan paragraphs dealing with property acquisition as if the second paragraph builds on or elaborates the statements made in the first paragraph. The Conservation Plan can only be logically and clearly interpreted by its readers as requiring all properties to be inspected and allowing NRHA to condemn properties with significant discrepancies only if the property owners fail to cure the problems with their property within one year after receiving written notice. The Court finds that, under the Conservation Plan, C and C Real Estate was entitled to receive a one-year letter similar to one given to the owners of the Decker junkyard. Because no property owner was given a one-year letter and an opportunity to correct deficiencies, the C and C Real Estate property cannot now be condemned under the Conservation Plan.

The timing delay in this matter is pivotal to the Court's decision. NRHA and the City of Norfolk waited fifteen years after adopting the Conservation Plan to condemn the C and C Real Estate property. It is particularly instructive that NRHA made a finding of blight in 1988 but did not move to rectify the blighted condition of the property until Coca-Cola indicated an interest in the

property. This time delay not only raises constitutional due process issues, when considered in conjunction with the reasoning herein, but argues strongly against the Court finding that the elimination of blight was the real reason for acquiring this property. In fact, there was credible evidence that substantial efforts improved the condition of this salvage yard. (Tr. 199-200. Respondent's Exhibit 16.) The record is replete with documentary evidence which provides a further basis for believing that perhaps there is a substituted reason for the acquisition, that is, for the benefit of Mid-Atlantic Coca Cola Bottling Company in accommodating their expansion plans. The Court is aware that, in Virginia, property properly acquired by condemnation may be sold or leased to commercial enterprise and is equally aware that there is no statutory authority that provides for the acquisition solely for such a purpose. *See* Va. Code Ann. § 36-50.1 (defining the limits of a Housing Authority's power of eminent domain under a conservation plan). The Court finds that too much time has elapsed between the time the Conservation Plan was adopted and when the property was condemned. The property owners had a reasonable expectation that their property would not be condemned fifteen years after the Conservation Plan was adopted, especially since the City of Norfolk conveyed additional property to C and C Real Estate in 2002 when part of Armistead Avenue was closed.

Additionally, and as part of any due process consideration, one must be aware that the Housing Authority is not required to pay for the value of the ongoing business. While that fact is not unique to this case, it is unique when viewed in terms of allowing fifteen years to pass during which time this business was able to acquire new property and to substantially improve and grow. It is, in part, a consideration of these intangibles which requires the strict construction principles against the condemnor applicable in these situations.

The reasoning in this opinion is supported by the expert testimony of Mr. Timothy Barrow, beginning at page 55 of the transcript of this case.

C and C Real Estate would have the Court decide that Virginia Code § 36-49.2 and its language allowing the housing authority to acquire property for industrial use "without the exercise of the power of eminent domain" prevents the authority from condemning the property in this case for industrial use. The Court disagrees with this interpretation and finds that this language merely expands the means by which property may be acquired by the housing authority.

In summary, strict construction must be used in interpreting and applying eminent domain statutes and condemnation resolutions. "[I]t is said that, in the construction of statutes conferring the power of eminent domain, every

reasonable doubt is to be resolved adversely to the right . . . that unless both the spirit and the letter of the statute clearly confer the power, it cannot be exercised." *City of Richmond v. Carneal*, 129 Va. 388, 397-98, 106 S.E. 403, 407 (1921). The Supreme Court of Virginia recognized that "the taking of private property . . . is a matter of serious import and is not to be permitted except where the right is plainly conferred and the manner of its exercise has been strictly followed." *Id.*, quoting *School Board v. Alexander*, 126 Va. 407, 412-13, 101 S.E. 349-51 (1919). Thus, "an act of the legislature delegating to a municipality the power of eminent domain must be strictly construed in favor of the land owner." *Ruddock v. City of Richmond*, 165 Va. 552, 562, 178 S.E. 44, 47 (1935).

Because of the broad scope of the wording in the Conservation Plan, in light of the statutory authority granted to NRHA, the failure to give C and C Real Estate a one-year letter, and the excessive amount of time between when the Conservation Plan was adopted and the property condemned, the Court finds, for the reasons stated in this opinion, that the property owned by C and C Real Estate cannot be taken by NRHA through eminent domain.

The Housing Authority's petition for condemnation is dismissed.